Carl M. Harrison, Jr., having been convicted of the offense of theft in the second degree and sentenced to five years' imprisonment, takes this appeal, raising several legal issues.
 I
He contends first that the prosecution of this case was employed as a means for collecting a debt. The appellant gave a check to Carson's Furniture, Inc. for $678 in payment for certain chairs, and directed its employees to deliver the chairs to a doctor's office. The check was issued on a numbered account in a Mobile bank. As it developed, the account had been closed for quite some time. Carson's Furniture, Inc., was paid shortly after the check bounced by the doctor who received the chairs. The owner of Carson's testified at trial that they did not have any further interest in pursuing Mr. Harrison. It is true that our courts have "taken a dim view" of the threat of prosecution to collect civil debts and that our constitution provides "that no person shall be imprisoned for a debt." Art. I, Sec. 20, Constitution of Alabama. Nonetheless, almost every criminal act also generates civil liability. To refuse to enforce criminal laws with vigor because of civil consequences to the parties is unthinkable. The appellant in this case was not charged with the offense of issuing a worthless check, but rather with theft in the second degree. By the time this case got under way, the doctor had paid for the chairs and the individuals involved were not "out-of-pocket". These facts do not in any way lessen or diminish the criminality of the act involved. We find as a matter of fact that the prosecution in this case was not employed as a means for collecting a civil debt and find no merit in appellant's contention to the contrary.
 II
Appellant next contends that he was charged under a void indictment. The indictment, returned by the grand jury of Mobile County, August of 1983, states: *Page 477 
 "Carl Milton Harrison, Jr. whose name is to the Grand Jury otherwise unknown than as stated, did knowingly obtain or exert by deception, unauthorized control over chairs, the property of Carson's Furniture, Incorporated, of the approximate aggregate value of six hundred seventy eight and 40/100 dollars ($678.40), with the intent to deprive the owner of said property, in violation of § 13A-8-4 of the Code of Alabama, . . ."
Appellant's position is that the control exercised over the chairs was not "unauthorized" and that therefore the indictment will not support a judgment.
We perceive, first of all, that the indictment satisfactorily performs the office of apprising the accused with reasonable certainty of the nature of the charge against him. The facts constituting the offense are stated in such a way that a person of ordinary understanding can understand the meaning intended to be conveyed. Appellant specifically contends that the element of "unauthorized control" was not proved since the chairs were voluntarily delivered by Carson's Furniture, Inc. Section 13A-8-1 (7), Code of Alabama 1975, states:
 "Obtains or exerts control or obtains or exerts unauthorized control . . . includes but is not necessarily limited to conduct heretofore defined or known as . . . obtaining property by false pretenses."
Where possession of property is obtained by fraud and the owner intends to part with the ownership and possession, then the offense committed is that of obtaining property by false pretenses. St. Paul Fire Marine Insurance Co. v. Veal,377 So.2d 962 (Ala. 1979); Jones v. State, 56 Ala. App. 444,322 So.2d 735 (1975). Obtaining property by false pretenses is proscribed under our new criminal code by the theft statute.Deep v. State, 414 So.2d 141 (Ala.Crim.App. 1982). What this statute and these cases say to us is that the control obtained over property through deception is still unauthorized control under the new criminal code. This unauthorized control might be control with the consent of the owner, where that consent is secured by deception. Consequently, the indictment is not faulty in this respect. We note further in passing that the term "unauthorized control" is unnecessary and might be treated as surplusage and that this challenge to the indictment was not made by the appellant to the trial court so that the trial court had no opportunity to act on it.
 III
Appellant next contends that he cannot be convicted of anything regarding this theft by deception because the check he gave on a non-existent bank account was post-dated by a year. It is true that the check given on February 10, 1983, was dated February 10, 1984, and that the person taking the check did not observe this discrepancy at the time the check was tentatively accepted in payment. Appellant contends that since he gave a post-dated check, he cannot be convicted of theft by deception. His logic is that since the check was not due and payable for a year, it could not be said, until that year expired, whether a bank account bearing that name and number would have the amount of money in it to cover that check, citing Code of Alabama 1975, § 7-3-114. The issue in this case, however, is not whether or not the check was a negotiable instrument, but whether the check was written with the intent to deceive the owner into parting with his property. This bank account had been closed for over a year. Appellant had to know that the check would be dishonored whenever it was presented. Appellant had no open account with this bank. Post-dating the check employed as part of a scheme to defraud does not convert it into a ticket to freedom.
 IV
Appellant further contends that error was committed during the closing remarks of the prosecutor to the jury. The language objected to is:
 "And there is a name for people who pass bad checks, that is paperhangers. And I am telling you right now that this *Page 478 
man has hung paper all over Mobile. You heard the testimony from the bank witness. . . ."
Counsel for the defense objected. The objection was sustained.
Counsel contends that there was no evidence in the record on which to base this argument. However, it does appear from the record that the cashier from the bank testified that the appellant's account had been closed for writing a lot of bad checks. The statement of the prosecutor therefore was based on testimony which was in evidence. The objection of counsel was sustained and it appears that no mistrial was sought so that there is no adverse ruling, in any event, upon which to predicate error.
 V
Appellant contends that the Habitual Felony Offenders Act should not have been applied in his case. The state moved to invoke application of the Act and introduced a "case action summary sheet", on which was typed a judgment of the District Court of Mobile County imposing a three-year suspended sentence in a former case. While the judgment itself did not state the crime to which the Defendant pleaded guilty, the information blank labeled "charge" was filled out with the word "embezzlement." The copy of the summary sheet was duly certified by the Clerk of the Mobile County District Court.
On the first page of the case action summary, a blank space labeled "attorney" is filled out with the words, "L.A. Marsal — retained." In the judgment entry, which states that the defendant pleaded guilty, there is no mention of whether or not an attorney represented appellant at the time of his plea.
The District Court has statutory authority to impose and suspend sentences, including those given for felonies pursuant to guilty pleas. Ala. Code §§ 12-12-4, 12-12-32 (1975). Its jurisdiction as to felonies and authority to receive guilty pleas (when the crime is not punishable by death) is concurrent with that of the circuit court. See Mitchell v. State,391 So.2d 1069, 1077 (Ala.Crim.App. 1980).
In order to use a conviction to enhance punishment in accordance with a habitual offender law, the record of the prior conviction must show that the defendant was represented by counsel, or that he waived representation, at the time of the prior conviction. Burgett v. Texas, 389 U.S. 109, 114,88 S.Ct. 258, 261, 19 L.Ed.2d 319 (1967).
In Burgett, the state offered, for purposes of the Texas recidivist statute, a record of a conviction in Tennessee which stated on its face that Burgett was not represented by counsel. A second conviction, however, which was admitted by the trial court, did not indicate whether or not the defendant had been represented, nor did it show any waiver of counsel. The only indication as to representation in the second case was an observation that "counsel . . . made arguments." This reference, the Supreme Court noted, did not indicate whether "counsel" as used was singular or plural. Id., 389 U.S. at 112,88 S.Ct. at 260. The court reversed Burgett's conviction because of the "serious" infringement on his constitutional right to counsel.
Thus, under the controlling authority of Burgett, a silent record raises a presumption that the defendant was not represented by counsel in the former proceeding, so that the record of the former conviction cannot be used to enhance punishment. A similar problem was presented in Ladd v. State,431 So.2d 579 (Ala.Crim.App. 1983). There, the docket sheet showed, in the space labelled "Defense Attorney" the name J. Louis Wilkinson. The entries regarding trial and sentencing did not give an indication that the accused was accompanied by counsel. This court said
 "[i]n the case before us, however, there is a presumption that appellant was not denied counsel. Although the Burgett court cautioned against `[p]resuming waiver of counsel from a silent record,' 389 U.S. at 114-15, 88 S.Ct. at 261-262, the record in the instant case is not silent. It shows that the Honorable J. *Page 479 
Louis Wilkinson appeared as counsel for appellant prior to trial. If appellant contends that Mr. Wilkinson did not represent him at trial, conviction and sentencing, we think he had both the burden and the opportunity of proving that fact."
The record, taken as a whole, is not silent but rather shows that appellant was represented by the Hon. M.A. Marsal, an eminent criminal defense attorney.
For purposes of proving convictions by a circuit court, the minute book, not the case action summary, is the official record, except where this rule has been changed by local act.Julius v. State, 407 So.2d 141 (Ala.Crim.App.), rev'd on other grounds, 407 So.2d 152 (Ala. 1980).
We take judicial notice of the organization of the Unified Judicial System, however, and of the fact that district courts do not keep minute books. The case action summary is the official, and indeed the only, record of conviction which the clerk's office retains. It was properly received into evidence, duly certified, as proof of a prior felony conviction in this case.
For all the foregoing reasons, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.