[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1114 
The appellant, Mark Randall Johnson, was serving a sentence of life imprisonment for a felony committed in Jefferson County. He was incarcerated at the Staton Annex Correctional Facility in Elmore County. He escaped from Staton, and upon recapture was convicted of escape in the first degree, a violation of § 13A-10-31, Code of Alabama 1975. Johnson was sentenced by the trial court, pursuant to the Habitual Felony Offender Act, to a term of life imprisonment on the escape charge, that sentence to be served consecutive to the life sentence that he was serving at the time of his escape.
The evidence presented by the State tended to establish that Captain Caldwell of the Department of Corrections was on duty at the Staton Annex on August 5, 1986. She observed four inmates outside the Staton Annex's fence, running toward a nearby highway. Lieutenant Robinson, the shift manager at Staton on the day of the escape, discovered that a two-foot hole had been cut in the fence surrounding the facility. Staton's warden, Charles Boutwell, about an hour after the escape, searched the area and found a pair of wirecutters located about five yards from the hole in the fence. The appellant was apprehended in Florida and was returned to the Alabama authorities four months later on December 1, 1986.
He raises thirteen issues on appeal.
 I
The appellant's first contention is that the passage of time between the offense and the trial amounted to a substantial delay which violated his right to a speedy trial. Eighteen months passed between the escape and the trial.
However, the record reflects that this issue has not been preserved for review because at no time either before or during the trial did he raise this issue. A.R.Crim.P. Temp. 16.2(a) provides that objections based on defects in the commencement of the proceeding or in the charge may be raised only by a pre-trial motion. A.R.Crim.P. Temp. 16.2(c) provides that the failure to present an objection constitutes a waiver. An objection on defense based upon the denial of a speedy trial should be raised by a motion under this section. Comment, Temp. Rule 16.2, A.R.Crim.P.
Review on appeal is limited to review of questions properly and timely raised at trial. Dixon v. State, 476 So.2d 1236,1239 (Ala.Cr.App. 1985). Therefore, absent a timely objection, this court may not now consider this issue on appeal. Moreover, had this issue been preserved, the appellant would not prevail. The record does not reveal any reason attributable to the State for the delay, nor does the appellant allege any fault on the State's part in causing the delay. Haywood v. State,501 So.2d 515, 517 (Ala.Cr.App. 1986), provides:
 "In determining whether a defendant's right to a speedy trial has been denied because of a pretrial delay, the considerations *Page 1115 
to be examined include the length of the delay, the reason for the delay, whether and how the defendant asserted his right to a speedy trial, and any resulting prejudice to the defendant. . . . The mere passage of time does not amount to the denial of a speedy trial." (citations omitted)
The appellant has not shown any prejudice, beside the mere passage of time, that would amount to the denial of a speedy trial, because the "mere passage of time does not amount to the denial of a speedy trial." Therefore, this issue must be decided adversely to the appellant.
 II
The appellant's second contention is based on the State's failure to disclose, after giving notice of its intent to prosecute under the Habitual Felony Offender Act and pursuant to the discovery order of the trial court, that the appellant's five prior convictions occurred when he was a juvenile. Specifically, he claims this amounts to withholding exculpatory evidence which is relevant to punishment, since he was 17 years old at the time these prior felonies occurred and the offenses did not show that transfer proceedings were conducted. The appellant claims that transfer proceedings from juvenile court to circuit court should have been shown in order to enhance his sentences according to the Habitual Felony Offender Act. The State offered certified copies of his convictions with the appellant's age noted on the copies.
Section 13A-5-10.1(a) Code of Alabama 1975 provides:
 "Certified copies of case action summary sheets on other records of the court are admissible for the purpose of proving prior convictions of a crime. . . ."
Clearly, a juvenile would not be adjudicated convicted of a felony in circuit court had he not been transferred from juvenile to circuit court. Moreover, the proper forum for attacking the validity of a prior conviction would be by a petition for a writ of error coram nobis. Jones v. State,431 So.2d 1367, 1372 (Ala.Cr.App. 1983). The proper forum for attacking the validity of prior convictions used for enhancing punishment in Habitual Felony Offender Act proceedings would be by a separate petition for a writ of error coram nobis filed in the court wherein the prior conviction took place. Gullat v.City of Hoover, 459 So.2d 1006, 1008 (Ala.Cr.App. 1984).
The record does not reflect that the State violated the discovery order or that the State failed to give notice of its intent to apply the Habitual Felony Offender Act in order to enhance the appellant's sentence. Therefore, this issue is to be decided adversely to the appellant.
 III
The appellant's third contention is that the State's exhibit one, a certified copy of the appellant's robbery conviction in Jefferson County, was unlawfully received into evidence because it was not certified and was not the best evidence of the conviction.
The record reflects that State's exhibit one is a two-page document. Page one of the document is a certified copy from the Department of Corrections' central records office that certifies the copy of page two, a case action summary sheet, as a true and correct copy of the original conviction record. Page one is signed by the custodian of the record and is notarized. Moreover, the custodian of the record testified that this was a true and correct copy of the original.
Certified copies of public records, signed and certified by the officer who has lawful custody, are properly authenticated and are admissible into evidence. Bentley v. State,450 So.2d 197, 199 (Ala.Cr.App. 1984). Moreover, for purposes of the Habitual Felony Offender Act, the proper method of proving prior convictions is by the introduction of certified copies of the defendant's previous convictions. Skinner v. State,452 So.2d 917, 920 (Ala.Cr.App. 1984).
 IV
The appellant's fourth contention is that the State's exhibit two, a certified *Page 1116 
copy of a case action summary sheet showing his second degree robbery conviction, was not correctly certified and was not the best evidence of the proceedings.
The record reflects that the case action summary sheet was certified as a true, complete, and correct copy. The sheet was witnessed to and signed by the clerk of the Jefferson County Circuit Court. As discussed in issue three, a case action summary sheet, pursuant to § 13A-5-10.1 Code of Alabama 1975, is admissible for the purpose of proving prior convictions. The record further reflects that the attestation requirements of §12-21-67, Code of Alabama 1975, were met. Therefore, the case action summary sheet was correctly certified and admitted into evidence to prove the appellant's prior conviction of robbery in the second degree.
A "case action summary sheet" maintained by the district court clerk's office, or a certified copy thereof, properly entered and duly certified, may be offered as proof of prior convictions. Sargent v. State, 515 So.2d 729 (Ala. 1987).
 V
The appellant's fifth contention is that Sergeant Anderson's testimony was not the best evidence of the facts to which he testified and thus, was not admissible. We disagree.
Officer Anderson testified that he was checking out inmates on work squads on the day of the escape and that he made checkout cards on each inmate. When asked by the State if he had the cards, he answered affirmatively. Officer Anderson, when asked if he recalled which squad the appellant was assigned to, responded by saying "vaguely." Appellant then objected and stated that the cards would be the best evidence. The State then rephrased the question and Officer Anderson testified that, to his knowledge, the appellant was assigned to that particular squad and area.
The record reflects that the cards in question were never introduced into evidence. Officer Anderson testified from his knowledge or memory and not from the contents of any documents. The best evidence rule applies to documents. The matter to be proved was within the knowledge of the witness, independent of the document. As stated in C. Gamble, McElroy's AlabamaEvidence § 212.01 (3d ed. 1977):
 "When a party wishes to prove the terms of a writing, the original itself must be introduced into evidence. . . ." (emphasis added)
 VI
The appellant's sixth contention is that the trial court erred in allowing Warden Boutwell to testify that his records reflected that the appellant should have been at the Staton Annex on the day of the escape. He contends that Boutwell's testimony was not the best evidence.
The appellant objected at trial: "We are going to object to his knowledge on hearsay or whatever he is basing it on." Now, the appellant claims that Warden Boutwell's testimony violated the best evidence rule.
A specific ground of objection waives all other grounds.Murray v. State, 494 So.2d 891, 893 (Ala.Cr.App. 1986); Cooperv. State, 474 So.2d 182, 183 (Ala.Cr.App. 1985). It is well settled that all grounds of objection not specified are waived, and that the trial court will not be placed in error on grounds not presented at trial. Blackmon v. State, 449 So.2d 1264, 1266
(Ala.Cr.App. 1984).
Only the grounds of objection presented to the trial court can serve as a basis for reversal, and even though the evidence may have been inadmissible on different grounds, the appellant is bound by the specific grounds of objection. Johnson v.State, 479 So.2d 1377, 1381 (Ala.Cr.App. 1985). See alsoBolding v. State, 428 So.2d 187 (Ala.Cr.App. 1983).
 VII
The appellant's seventh contention is that the trial court erred in denying his motion for a mistrial. Specifically, he alleges that the trial court erred in not giving an instruction to the jury to disregard Warden Boutwell's testimony about State's *Page 1117 
exhibit three, a pair of wire cutters found outside the fence after the escape.
When the State offered the wire cutters into evidence, the appellant objected and the trial court sustained his objection. The appellant contends that the trial court committed reversible error by failing to give curative instructions to the jury to disregard Warden Boutwell's testimony concerning the wire cutters. However, the record reflects that the appellant did not request a curative instruction. Therefore, he would be precluded from raising the issue on appeal. Review on appeal is limited to questions properly and timely raised at trial. Dixon v. State, 476 So.2d 1236, 1239 (Ala.Cr.App. 1985). Moreover, he cannot complain on review concerning this issue, because his objection was sustained. Since there was no adverse ruling, there is nothing for this Court to consider on appeal.Breedlove v. State, 482 So.2d 1277, 1283 (Ala.Cr.App. 1985). A party cannot claim error where no adverse ruling is made against him. Holloway v. Robertson, 500 So.2d 1056, 1059 (Ala. 1986).
The appellant also argues that the trial court committed reversible error in denying his motion for a mistrial based upon the cumulative and prejudicial effect of the trial court's conditionally allowing the warden to testify on voir dire concerning the wire cutters and then later excluding the wire cutters by sustaining the appellant's objection to their admission. We have reviewed each allegation of error and find that the cumulative effect of these alleged errors does not demand a reversal. Where no single instance of an alleged error constitutes reversible error, the cumulative effect of the errors is not any greater. Britain v. State, 533 So.2d 684
(Ala.Cr.App. 1988). See also Farley v. State, 406 So.2d 1045,1049 (Ala.Cr.App.), writ denied, 406 So.2d 1050 (Ala. 1981). Therefore, the cumulative nature of any alleged prejudice does not require reversal.
In Free v. State, 495 So.2d 1147, 1157 (Ala.Cr.App. 1986), we held:
 "The granting of a mistrial is an extreme measure and should be exercised only when manifestly necessary or when the ends of justice would otherwise be defeated. The granting of a mistrial is addressed to the broad discretion of the trial judge, and his ruling will not be revised on appeal unless it clearly appears that such discretion has been abused." (citations omitted)
In light of the record, we are of the opinion that the mistrial was correctly denied.
 VIII
The appellant's eighth argument is that the trial court erred by denying his motion for a judgment of acquittal because, he argues, the State failed to establish a prima facie case of escape in the first degree. Specifically, he contends that the State failed to prove that he had been previously convicted of a felony or had escaped from custody.
The State's exhibits one and two were admitted into evidence. They revealed the appellant's previous convictions and were sufficient to prove his prior felony convictions. Testimony established that the appellant had escaped and had been returned from custody in Florida four months later. Clearly, the record reveals that the State established a prima facie case of escape in the first degree. Section 13A-10-31(a)(2) Code of Alabama 1975, provides that one is guilty of this offense if,
 "Having been convicted of a felony, he escapes or attempts to escape from custody imposed pursuant to that conviction."
Therefore, from the evidence presented, there was sufficient proof to sustain the conviction, since the elements of the offense were proven.
 IX
The appellant's ninth contention is that the State violated his constitutional rights in failing to furnish him with "proper clothing" for his trial. Specifically, he alleges that he was prejudiced by wearing his "prison whites" in court. However, the record reflects that the appellant did not object to wearing his prison clothes. The *Page 1118 
United States Supreme Court in Estelle v. Williams,425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976), held:
 "[A]lthough the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."
Therefore, since the appellant failed to raise this issue before or during trial, it is presumed to be waived for purposes of appeal.
 X
The appellant's tenth argument is that the trial court erred in sustaining the State's objection to defense counsel's closing argument concerning a prison guard's allowing the appellant to escape. The appellant bases his argument upon the following testimony elicited by the appellant during the cross-examination of Warden Boutwell:
 "Q. Are you aware of any suspension given to one of the correctional officers that was supposed to be manning a guard tower because they watched the entire proceeding and whatever was going on there that day and allowed it to go — allowed these people to leave? Are you aware of that?
 "A. I don't believe I understand what you are talking about.
 "Q. Well, wasn't a guard officer in the guard tower suspended because they stood there and just watched and let the people leave?
"A. Are you asking me?
"Q. Right.
"A. Which officer you want me to speak about?
"Q. Whichever one was suspended because of it.
"A. And which post?
 "Q. Which ever one was suspended because he or she stood there and watched.
"A. Well, you got — which one?
 "Q. You are the warden, you are the one that I'm asking about who got suspended. How many got suspended for letting them out of there?
 "A. The one on the outside of the perimeter fence in Tower Number 3 got suspended.
 "Q. And that was for just basically letting those four inmates, whoever they were, out of that place, right? "A. I think we call it inattentive on the job."
The following occurred during closing argument:
 "MR. FORMBY: . . . [and] one thing I want to point out to you in the testimony of the assistant warden. It was like pulling teeth to get them to admit that there was a guard out there that just stood there and let four people go out — "MR. HOUSTON: Your Honor, I have to object to that. That's an improper statement and there is no evidence to that effect whatsoever.
"THE COURT: I will sustain."
The warden stated that the guard was suspended for being "inattentive on the job." The warden did not testify that the guard allowed the appellant to escape. The appellant's contention that the guard "just stood there and let" the appellant escape, while one of several inferences from the testimony, was not important. It was not contended that the people who escaped through the cut fence thought they had permission to do so.
In argument to the jury, counsel may not state facts not in evidence, but may state or comment on reasonable inferences from the evidence and may draw conclusions from the evidence based on his own reasoning. Twilley v. State, 472 So.2d 1130,1139 (Ala.Cr.App. 1985).
There was no evidence as to whether a guard did or did not see the appellant escape. The matter was before the jury, and *Page 1119 
we do not consider that reversible error was committed by the court in sustaining the State's objection to comments in a "grey area" such as this.
 XI
The appellant's eleventh contention is that the trial court committed reversible error by not sufficiently defining "reasonable doubt" and that the trial court's oral charge on circumstantial evidence was not correct.
The trial court's oral charge on reasonable doubt is stated as follows:
 " 'Reasonable doubt' is one of those terms like a lot of terms in the law that addresses itself to your good common sense. And a lot of times, if not almost always, your good common sense definition of words and phrases is at least as good, if not a whole lot better, than some of these definitions that we lawyers and judges use. A reasonable doubt is simply a doubt for which you have a reason. A doubt for which you can assign a reason that comes from that witness stand, that comes from the evidence and the testimony in the case. Another way of saying it is this: If after considering all of the evidence in the case, all of it, a part of it, or a lack of it, you ask yourself this question: Is Mr. Johnson guilty? And if the answer that freely and naturally flows back to you is: I doubt that he is, and if that doubt comes from something that came from that witness stand, then the law says that that's the kind of evidence that would entitle Mr. Johnson to an acquittal or finding him not guilty.
 "If on the other hand, if after considering all the evidence in the case, all of it, a lack of it, or a part of it, you ask yourself that same question: Is Mr. Johnson guilty? And if the answer that freely and naturally flows back to you is: I have no doubt for which I can assign a reason that comes from that stand but that he is guilty, then the law says that that's the kind of case that entitles the State to a conviction.
 "Now, the law says that the State does not have to prove guilt to a mathematical certainty. The State doesn't have to prove guilt beyond all doubt, but they must prove guilt to you beyond a reasonable doubt."
The oral charge, in the case at bar, on reasonable doubt "arising out of the evidence," "within the evidence," and "after considering all of the evidence in the case, all of it, a lack of it, or a part of it," correctly charged the jury on the law of reasonable doubt. See Busby v. State, 412 So.2d 837
(Ala.Cr.App. 1982); Garrison v. State, 372 So.2d 55
(Ala.Cr.App. 1979).
The trial court's oral charge on circumstantial evidence was:
 "It has been admitted both the state and the defendant have told you that this case is a circumstantial evidence case. The best way I know to define 'circumstantial evidence' is by example. I haven't thought of any better definition. Since we don't get a whole lot of snow down here I usually define it in terms of rain and define it this way. If you and I came in this morning at eight o'clock and sat down in this courtroom and the blinds were closed and we started working and when we left to come in the courtroom we left our cars out in the parking lot and the ground was dry and there wasn't any moisture on the windows or anything, and you and I worked all day and we left here at five and went back out to get in our car to go home and we walked outside the front door downstairs and the cement out there was wet and we got in our car and our windshield was wet and we had to turn the windshield wipers on. And we were in here working all day long and we didn't see it rain or anything, we would have concluded based on what we saw out there that it rained while you and I were in here working. But we didn't see it. But we knew it happened. Now, that's my definition of circumstantial evidence. Now, what is the law regarding circumstantial evidence as far as proof of a case goes? Circumstantial evidence justifies a conviction only when it is inconsistent with any reasonable theory of innocence. The test for a conviction based on circumstantial *Page 1120 
evidence is whether you, the jury, might resonably find that the evidence excluded every reasonable hypothesis except that of guilt." (Emphasis added.)
In Williams v. State, 474 So.2d 178, 181 (Ala.Cr.App. 1985), we held:
 "When reviewing a conviction based largely on circumstantial evidence, we must apply the standards set forth in Dolvin v. State, 391 So.2d 133 (Ala. 1980); Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979). Basically, these cases held that the test to be applied is whether the jury might reasonably conclude that the evidence excluded every reasonable hypothesis except that of guilt."
The trial court's oral charge was clearly based upon the above principle of law regarding circumstantial evidence. We find no reversible error.
 XII
The appellant's twelfth argument is that the trial court erred in not going behind the evidence of prior convictions to determine their validity. As set out in part II, the proper means for challenging the "validity" of a prior conviction would be by a petition for relief under Rule 20, A.F.Crim.P.Temp. 20.
 XIII
The appellant's final argument is that his enhanced sentence under the Habitual Felony Offender Act constitutes cruel and unusual punishment.
The Habitual Felony Offender Act does not constitute cruel and unusual punishment. Thompson v. State, 462 So.2d 777, 781
(Ala.Cr.App. 1984).
Also, the appellant contends that the proportionality test enunciated in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001,77 L.Ed.2d 637 (1983), should be applied in reviewing his sentence because his codefendant was given a different sentence.
In Maddox v. State, 502 So.2d 790 (Ala.Cr.App. 1986), writ denied, Ex parte Maddox, 502 So.2d 794 (Ala. 1987), and inAtkins v. State, 497 So.2d 598 (Ala.Cr.App. 1986), we determined that Solem, supra, is inapplicable to sentences of less than life without parole, and that the appellate courts are not required to test all sentences against the proportionality standard of Solem.
Based upon the foregoing, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
 *Page 45